**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 984 BRONX PARK SOUTH, LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ROBISON ENERGY COMMERCIAL, LLC d/b/a ORIGINAL ENERGY, <br><br> Defendant. | Civil Action No. 1:22-cv-4841 <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff 984 Bronx Park South, LLC, individually and on behalf of all others similarly situated, and alleges as and for its Class Action Complaint (the "Action") against Defendant Robison Energy Commercial, LLC d/b/a Original Energy ("Defendant" or "Original Energy"), upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its attorneys, as follows:

### NATURE OF THE ACTION

1. This action seeks to redress Defendant's deceptive and improper pricing practices that have caused thousands of consumers to pay considerably more for their energy services.

2. For decades, the prices paid by consumers for their electricity and natural gas services were strictly regulated. However, in recent years, state legislatures have opened energy markets to companies like Defendant (called energy service companies, or "ESCOs"), whereby consumers could choose from a variety of companies selling energy services in additional to traditional utilities.

3. An unintended consequence of the opening of energy markets is that some ESCOs,

such as Defendant, have taken advantage of deregulation to charge customers unfair energy rates. For that reason, various states, including New York, have enacted legislation to curb pricing abuses by ESCOs. New York has adopted the Energy Services Customers Bill of Rights, N.Y. General Business Law § 349-d (the "ESCO Bill of Rights"), which mandates that ESCO contracts and marketing materials clearly and conspicuously identify all variable charges included as part of an energy plan.

4.  Defendant violates the ESCO Bill of Rights by charging customers an exorbitant variable post contract rate but failing to clearly and conspicuously disclose the variable charge pricing in the contract. This practices violate New York's ESCO Bill of Rights.

5.  Further, Defendant bills its customers an unlawful "Customer Charge" each month, which is not authorized by Defendant's contracts with its customers.

6.  A class action is the only way Defendant's customers can remedy Defendant's wrongdoing, as the loss suffered by each customer is small compared to the colossal task of challenging Defendant's unlawful practices, and it is thus untenable for individual consumers to bring his or her own lawsuit. In addition, many customers may not even realize that they are victims of Defendant's conduct.

7.  Plaintiffs bring this action on behalf of themselves and classes of Defendant customers similar harmed and described below. Plaintiffs seek, *inter alia*, actual damages, statutory damages, treble damages, declaratory and injunctive relief, restitution, disgorgement, and attorneys' fees and costs.

## PARTIES

8.  Plaintiff Bronx Park South, LLC is a limited liability company organized under the laws of New York with a principal office in Bronx, New York.

9. Defendant Robison Energy Commercial, LLC d/b/a Original Energy is a limited liability company corporation organized under the laws of New York with its principal office in Elmsford, New York.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which, upon information and belief, some members of the putative plaintiff class are citizens of States different from Defendant as of the filing date of this complaint.

11. Plaintiff is informed and believes that one or more unnamed members of the putative plaintiff class are citizens of States different from Defendant as of the filing date of this complaint, such as a corporation with a principal place of business and a state of incorporation in a state other than New York.

12. Upon information and belief, most members of the putative plaintiff class are corporate entities, many of which are citizens of States different from Defendant.

13. This Court has general personal jurisdiction over Defendant. Defendant is a corporation organized under the laws of New York with its principal office in New York, New York.

14. Venue is proper pursuant to 28 U.S.C. § 1391. Defendant has a principal office in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District.

**SUBSTANTIVE ALLEGATIONS**

**The Business of ESCOs**

15. Beginning in the 1990's, many states across the United States began to deregulate their retail energy supply markets, allowing customers to purchase natural gas and electricity through an ESCO instead of through a traditional utility.

16. Deregulation was designed to increase competition between energy suppliers in the open market by allowing customers a choice of energy suppliers, in turn lowering rates for customers.

17. ESCOs play a middleman role, as ESCOs purchase energy from an energy company and then sell that energy to the customer. However, ESCOs do not deliver energy to customers, as the energy is delivered by the customer's utility. ESCOs merely buy and sell gas and electricity and then sell that energy to customers with a mark-up.

18. Thus, ESCOs are essentially brokers, as they neither produce nor deliver gas or electricity, but merely buy energy from a producer and re-sell it to consumers.

19. Because of their flexibility, ESCOs can offer alternative rates that may benefit customers from those of a traditional utility. Further, ESCOs do not have to file or seek approval from state utility regulators for the energy rates they charge customers.

20. After a customer switches to an ESCO, the customer's energy supply charge – based either on a kilowatt-hour ("kWh") (for electricity) or therm (for gas) usage – is calculated using the supply rate charged by the ESCO.

21. Many ESCOs, including Defendant, market to customers an attractive fixed supply charge that is comparable to, or below, the traditional local utility rate.

22. However, the fixed supply charge is generally only for a specified term (for

example, 12 months), at which point the supply charge will convert to a month-to-month variable charge.

23. The variable rates charged by ESCOs are generally always substantially higher than both the fixed rate offering and the rates charged by the traditional utility. Further, the methodologies by which ESCOs calculate the variable rates are often not disclosed to customers in the contract, or to the extent there is disclosure the details are vague and do not parallel the actual charges on the bill.

24. In short, during the variable month-to-month post contract period, ESCO customers are often charged outrageously high energy rates detached from market conditions that no reasonable customer would ever agree to, yet the customer is not provided any notice of the change to the variable month-to-month rate (or, often, the manner in which the variable rate is calculated by the ESCO).

25. As a result, many state Legislatures have enacted safeguards to protect customers from the predatory practices of ESCOs. For example, the New York Legislature has enacted the "ESCO Bill of Rights," N.Y. General Business Law § 349-d, effective January 11, 2011.

26. In an effort to curb abuses by ESCOs in charging exorbitant variable month-to-month rates, the ESCO Bill of Rights provides that "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be *clearly and conspicuously* identified." N.Y. Gen. Bus. Law § 349-d(7) (emphasis added).

27. The ESCO Bill of Rights further provides that "any contract for energy services which does not comply with the applicable provisions of this section shall be void and unenforceable as contrary to public policy." N.Y. Gen. Bus. Law § 349-d(8).

**Defendant's Failure to Clearly and Conspicuously Disclose its Post Contract Variable Rate**

28. Defendant enters into contracts with customers to supply electricity and/or natural gas for a fixed contract term.

29. At the conclusion of the contract term, Defendant charges customers a month-to-month variable rate.

30. Defendant's contract, however, fails to clearly and conspicuously disclose to the customer that the customer will be charged a variable rate after the fixed term expires.

31. In provisions of the contract that are on the second page, and which are not highlighted or clearly set apart from the rest of the contract terms, the contract vaguely states that the post-fixed rate "will be a monthly variable Purchase Price, based on market conditions":

> **Provisions for renewal of this agreement** | Upon the expiration of the Delivery Period, this transaction shall continue for successive one-month terms ("collectively the "Renewal Term") until either Party notifies the other in writing, at least 15 days prior to the end of the Delivery Period or 15 days prior to the end of each successive month Renewal Term. During the Renewal Term, the Purchase Price for each successive month Renewal Term will be a monthly variable Purchase Price, based on market conditions, unless otherwise agreed to in writing by the parties.

32. "Purchase Price", however, is problematically defined as including *both* a variable price *and* a fixed price:

> The Purchase Price excludes Utility distribution charges and sales taxes. Utility losses & current NYS clean energy standard mandatory minimums (REC & ZEC charges) are included in price.
>
> ☒ Fixed __.06887__ / Kilowatt-hour (KWh) includes GRT
> ☐ Monthly variable price based on market conditions.

33. Taking the "Delivery Period" and "Purchase Price" provisions together, it is ambiguous whether the customer will be charged a fixed or variable rate during after the fixed-rate term.

34. Defendant introduces further ambiguity into the contract by checking the "Fixed" rate within the definition of the "Purchase Price".

35. Due to the inherently vague and contradictory language of Defendant's contract, no

6

reasonable customer could definitively ascertain what rate, whether fixed or variable, would be charged to the customer during any post-contract term.

36. The contract also fails to identify in any respect that the customer's rate following the conclusion of the Delivery Period would be based on a variable rate per therm (for gas) or per kWh (for electricity), or provide any other details regarding the variable rate aside from it being based on "market conditions."

37. A statement that a variable rate is based on "market conditions" does not provide any reasonable customer with information on how the variable rate would in fact be calculated – such as, for example, the "market" that will form the basis for the rate.

38. The purpose of clearly and conspicuously disclosing variable rate charges in an ESCO contract is evident: a reasonable customer should be able to determine if the customer is being properly charged in accordance with the contract. However, Defendant's assertion that it will charge a variable rate based on "market conditions" does not allow the customer to determine if it is being charged properly. Defendant also provides no transparency on its billing statements to customers as to how the variable rate is calculated, which further undermines the absence of a clear and conspicuous disclosure.

39. The variable rates charged by Defendant to customers upon the conclusion of the Delivery Period are significantly in excess of both the fixed-price rate and the rate charged by the traditional utility.

40. The actions of Defendant as described herein violate the spirit and letter of Section 349-d, as the law is explicitly designed to protect energy consumers and allow them to make informed decisions when decided whether to switch to an ESCO. Defendant's actions do the exact opposite.

**Defendant's Unlawful "Customer Charge"**

41. Defendant's contract with customers identifies the "Fixed" rate that customers will be charged, measured either in per therm (gas) or per kWh (electricity):

> The Purchase Price excludes Utility distribution charges and sales taxes. Utility losses & current NYS clean energy standard mandatory minimums (REC & ZEC charges) are included in price.
>
> ☒ Fixed .06887 / Kilowatt-hour (KWh) includes GRT
> ☐ Monthly variable price based on market conditions.

42. Defendant's contract does not identify the basis for any "Customer Charge," or similar charge, that is unrelated to the Fixed rate.

43. The contract provides that Defendant "is obligated to sell and deliver, <u>for the Purchase Price as specified in the transaction Confirmation</u>" the gas or electricity to the customer.

44. The "Purchase Price" is the Fixed rate set forth in the contract.

45. However, Defendant bills its customers each month for a "Customer Charge," which is unrelated to the separate Fixed rate charge (or variable rate if it is a post contract term) that is based on the per therm or kWH usage.

46. Defendant's billing statements provide no information to the customer as the nature of the "Customer Charge" or how the charge is calculated by Defendant.

47. Defendant has no authority under the contract to charge a "Customer Charge" to its customers.

**Facts Regarding Plaintiff**

48. Plaintiff contracted with Defendant on or about March 27, 2020 for electric service for the property located at 1305 53 St. HOBM, Brooklyn, NY 11219 for a 18-month term beginning April 1, 2020 and ending October 1, 2021.

49. A copy of the contract between Plaintiff and Defendant is attached hereto as

"Exhibit A" and incorporated by reference herein. Upon information and belief, the contract is a uniform contract that Defendant has used for all customers.

50. Pursuant to the contract, Defendant agreed to provide Plaintiff electric service at a fixed-price rate $0.06887 per kWh.

51. The contract fails to clearly and conspicuously disclose that Plaintiff would be charged a variable rate upon the conclusion of the 18 month term.

52. Upon conclusion of the 18 month term, without prior notice to Plaintiff, Defendant began charging Plaintiff a variable month-to-month rate.

53. The variable month-to-month rate charged by Defendant upon the conclusion of the 18 month term is significantly in excess of the original fixed-price rate. In fact, the variable rates charged by Defendant each month were approximately double the original fixed-price rates, as well as the rates charged by Consolidated Edison, Plaintiff's regular utility provider.

54. Defendant has not disclosed to Plaintiff how its month-to-month variable rates are calculated.

55. Further, each month Plaintiff has been charged a "Customer Charge" by Defendant.

56. There is no provision in Plaintiff's contract with Defendant for a "Customer Charge", or any other charged unrelated to the Fixed rate measured per therm.

57. Upon information and belief, the "Customer Charge" is not a "Utility distribution charge", a "Daily distribution service" or a "sales tax." In fact, the "Customer Charge" is listed in Defendant's billing statements as part of the supply charge.

58. Defendant billed Plaintiff a total of hundreds of dollars in unauthorized "Customer Charges."

## **CLASS ALLEGATIONS**

59. Plaintiff brings this action on its own behalf and on behalf of two classes of similarly-situated individuals for damages, disgorgement, restitution, and declaratory and injunctive relief under Rule 23 of the Federal Rules of Civil Procedure.

60. The first Class, the Variable Rate Class, is preliminary defined as follows:

All persons in the State of New York who were charged a variable rate for electricity and/or gas by Defendant after the Delivery Period of the contract expired during the applicable statute of limitations period up to and including the date of judgment.

61. The second Class, the Customer Charge Class, is preliminarily defined as follows:

All persons in the State of New York who were charged a "Customer Charge" by Defendant during the applicable statute of limitations period up to and including the date of judgment.

62. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed.

63. Excluded from the Classes are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Defendant.

64. This action is properly maintainable as a class action. The proposed Classes are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. There are questions of law or fact common to all Class Members that predominate over any questions affecting only individual members. Specifically, the common questions of fact and law include:

   a. Whether Defendant violated New York General Business Law § 349 and § 349-d;

    b. Whether Defendant was unjustly enriched as a result of its conduct;

    c. Whether Defendant breached its contracts with Plaintiff and the Class;

    d. Whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof;

    e. Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

    f. The extent of class-wide injury and the measure of damages for those injuries.

65. The proposed lead Plaintiff's claims are typical of those of the proposed Classes because the proposed lead Plaintiff's claims are based upon the same facts and circumstances that give rise to the claims of the other Class Members and are based upon the same predominate legal theories.

66. The representative Plaintiff can adequately and fairly represent the Classes. No conflict of interest exists between the representative Plaintiff and the Class Members because Defendant's alleged conduct affected them similarly.

67. The Plaintiff and its chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the Plaintiff's attorneys are competent in the areas of law relevant to the Complaint and have sufficient experience and resources to vigorously represent the Class members and prosecute this action.

68. A class action is superior to any other available method for adjudicating this controversy. The proposed class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Classes, (ii) to keep the courts from being inundated by hundreds or thousands of repetitive cases, and (iii) to reduce transactions costs so

that the injured Class Members can obtain the most compensation possible. Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

## CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(ON BEHALF OF BOTH CLASSES)**

69. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70. Defendant's contracts with Plaintiff and the Class provide that the contracts are governed by New York law.

71. Plaintiff brings this claim under N.Y. General Business Law § 349 on its own behalf and on behalf of each member of the Classes.

72. New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349.

73. Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

74. Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, including:

   a. Failing to adequately disclose that despite the language of its contracts, Defendant's energy rates will be charged at a variable rate instead of a fixed rate;

   b. Failing to adequately disclose that Defendant's variable energy rates are consistently and significantly higher than the rates a customer's existing utility

    charges;

  c. Failing to provide customers adequate advance notice of the variable rates it would charge;

  d. Failing to adequately disclose the variable rate methodology Defendant used to calculate its variable rates to enable consumers to potentially compare prices; and/or

  e. Failing to adequately disclose to customers that they will be charged a "Customer Charge" in addition to the fixed rate or variable rate charge.

75. The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

76. As a direct and proximate result of Defendant's unlawful and deceptive marketing and billing practices, the Class has suffered injury and monetary damages in an amount to be determined at the trial of this action.

77. Plaintiff and the members of the Class further seek equitable relief against Defendant. Pursuant to N.Y. Gen. Bus. Law § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to the Plaintiff and the Class all amounts wrongfully assessed and/or collected.

78. As a result of Defendant's unfair and deceptive practices, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their damages, costs and reasonable attorneys' fees and all other relief available under N.Y. Gen. Bus. Law § 349.

## COUNT II

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349-D
### (ON BEHALF OF BOTH CLASSES)

79. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. Plaintiff brings this claim under N.Y. Gen. Bus. Law § 349-d on its own behalf and on behalf of each member of the Classes.

81. N.Y. Gen. Bus. Law § 349-d(7) provides that "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be *clearly and conspicuously* identified." N.Y. Gen. Bus. Law § 349-d(7) (emphasis added).

82. The terms that Defendant provides to its customers fail to clearly and conspicuously inform customers of Defendant's variable energy rates or other factors affecting Defendant's variable rates, and fail to clearly and conspicuously inform customers that they will be charged a "Customer Charge".

83. Defendant has violated Section 349-d(7) and caused financial injury to Plaintiff and the Classes by causing Plaintiff and the Class Members to pay more for energy than they would have had they stayed with their previous supplier or chosen a different supplier.

84. As shown above, Defendant has willfully or knowingly violated Section 349-d.

85. As a direct and proximate result of Defendant's violation of Section 349-d, the Class Members have suffered injury and monetary damages in an amount to be determined at the trial of this action.

86. Plaintiff and the members of the Classes further seek equitable relief against Defendant. Pursuant to N.Y. Gen. Bus. Law § 349-d, this Court has the power to award such

relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to the Plaintiff and the Classes all amounts wrongfully assessed and/or collected.

87. As a result of Defendant's unfair and deceptive practices, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their damages, costs and reasonable attorneys' fees and all other relief available under N.Y. Gen. Bus. Law § 349-d.

## COUNT III

### BREACH OF CONTRACT
### (ON BEHALF OF BOTH CLASSES)

88. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

89. Plaintiff and the Customer Charge Class were bound by valid contracts with Defendant for the provision of energy services.

90. Each of these contract provides that Defendant "is obligated to sell and deliver, <u>for the Purchase Price as specified in the transaction Confirmation</u>" the gas or electricity to Plaintiff and the Customer Charge Class.

91. Defendant's contracts with Plaintiff and the Customer Charge Class do not provide for the charge of a "Customer Charge," or any charge unrelated to the monthly rate per therm or kWh.

92. Defendant has breached its contracts with Plaintiff and the Customer Charge Class by charging Plaintiff and the Customer Charge Class unauthorized "Customer Charges."

93. Plaintiff and the Customer Charge Class have been damaged as a result of

15

Defendant's breach of contract in the amount of "Customer Charges" paid by Plaintiff and the Customer Charge Class.

94. As a result of Defendant's breaches, Defendant is liable to Plaintiff and the Customer Charge Class for damages and attorneys' fees and expenses.

## COUNT IV

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(ON BEHALF OF BOTH CLASSES)**

95. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

96. Plaintiff and Classes were bound by valid contracts with Defendant for the provision of energy supply.

97. Every contract has an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

98. Under the contract, to the extent Defendant had discretion to set pricing for its energy services, it was obligated to exercise its discretion in good faith.

99. Plaintiff reasonably expected that the variable energy rates would, notwithstanding Defendant's profit goals, reflect the wholesale and retail market prices for energy and that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy energy from Defendant.

100. Defendant breached the implied covenant of good faith and fair dealing by unreasonably exercising its rate-setting discretion to price gouge and frustrate Plaintiff's and other Class Members' reasonable expectations that Defendant's energy rate would be commensurate

with the contract and would otherwise be a good and fair rate, and by unreasonably exercising its discretion to charge a "Customer Charge".

101. As a result of Defendant's breaches, Defendant is liable to Plaintiff and members of the Class for damages and attorney's fees and expenses.

## COUNT V

### UNJUST ENRICHMENT
### (ON BEHALF OF BOTH CLASSES)

102. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

103. Plaintiff and the Class Members would not have contracted with Defendant for energy had they known the truth about Defendant's energy rates and charges.

104. By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated by the parties at the expense of Plaintiff and Class Members.

105. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and Class Members made for excessive energy charges.

106. Therefore, Defendant is liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendant's actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(a) Issue an order certifying the Class defined above, appointing Plaintiff as Class representative, and designating its Attorneys as Class Counsel;

(b) Find that Defendant has committed violations of the law alleged herein;

(c) Enter an order granting monetary relief and damages on behalf of the Class;

(d) Enter an order granting all appropriate relief on behalf of the Class;

(e) Render an award of compensatory damages, the amount of which is to be determined at summary judgment or trial;

(f) Render an award of treble damages and/or punitive damages;

(g) Enter judgment including interest, costs, reasonable attorneys' fees, and expenses; and

(h) Grant all such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted, this the 17th day of August, 2022.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/ Victoria J. Maniatis*
Victoria J. Maniatis (NY Bar No.: 2578896)
James R. DeMay *(pro hac vice pending)*
Blake Yagman (NY Bar No. 5644166)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
100 Garden City Plaza
Garden City, NY 11530
Telephone: (800) 530-9800
Email: vmaniatis@milberg.com
Email: jdemay@milberg.com
Email: byagman@milberg.com

**STEIFMAN LLP**

*s/ Michael Steifman*
Michael Steifman, Esq.
Steven P. Knowlton, Esq.
Fran Rudich, Esq.
STEIFMAN LLP
292 Montauk Highway
South Hampton, New York 11968
Telephone: 718-645-4100
Email: ms@steifmanlaw.com
Email: sknowlton@steifmanlaw.com
Email: frudich@steifmanlaw.com